## Dicken *versus* Hall.

1. Although the general rule is that notice of dishonor of a note should be given the day after it is received, where the parties live at the same place, or by the next practicable mail, if the parties live at different post offices, and should be given at the residence or place of business of the person entitled to receive it, yet actual notice wherever received is good.

2. Where an indorser is absent from home, and notice is sent him by mail without any previous direction, and he actually receives it as soon or sooner than if left at his place of business, and he is not in any way predjudiced thereby, it is good notice and binds him, and such notice is also good as to a prior indorser who is not injured or prejudiced by the delay.

October 11th 1878. Before SHARSWOOD, MERCUR, GORDON, PAXSON, WOODWARD and TRUNKEY, JJ. AGNEW, C. J., absent.

Error to the Court of Common Pleas, No. 2, of *Allegheny county:* Of October and November Term 1878, No. 208.

Assumpsit by J. G. Hall, as endorser, against J. C. Dicken, a prior endorser, on the following promissory note:

"$525.05.                     Pittsburgh, October 12th 1876.

Four months after date we promise to pay to the order of J. Charles Dicken, five hundred and twenty-five five one-hundreths dollars, at Workingman's Bank, Allegheny City, Pa., without defalcation for value received.

REED BROS. Agents."

ENDORSED.

"Pay to the order of J. G. Hall.

J. CHAS. DICKEN."

"Pay to the order of C. R. Kline, Cash.

JNO. G. HALL."

"Pay to the order of Jas. A. Hill, Cash.

C. R. KLINE, Cashier."

"Pay to the order of F. L. Walther, Cash., for collection for account of Union Banking Co. of Philadelphia.

JAS. A. HILL, Cashier."

At the trial the jury found the following facts, subject to the opinion of the court, whether, upon these facts, the defendant had had due legal notice of protest and non-payment. The note fell due and was duly protested on the 15th of February 1877, in Allegheny City. The notices of protest were duly forwarded to the Union Banking Company of Philadelphia, the last endorser, and by that bank duly forwarded to the Elk County Bank, the next prior endorser, at Ridgway, Pa., at which place they arrived on 19th of February. J. G. Hall, the next prior endorser, lived in Ridgway, was an attorney, had a law office and a law partner there, and was also a member of the Elk County Bank, a private bank-

[Dicken *v.* Hall.]

ing company. On February 20th Kline, the cashier of the bank, mailed the notices of protest to J. G. Hall at Louisville, Kentucky, where he was temporarily. He did not go to his residence or place of business to give notice or make inquiry, but knowing of the absence of Hall and where he was, and Hall having no one in Ridgway expressly authorized to attend to his private business, he mailed the notices to him at Louisville. Hall received the notices on the 22d day of February, and on the same day mailed the notices to Pittsburgh to defendant, who was the next prior endorser. If these facts constituted due and legal notice to defendant, judgment was to be entered on the verdict (which was for plaintiff for $567.11), otherwise judgment for the defendant *non obstante veredicto.*

The court in banc entered judgment on the reserved question for the plaintiff, White, J., delivering the following opinion:

"If the bank in Ridgway had left the notice of protest at Hall's residence in Ridgway or his place of business, no doubt the service would have been good. And if some one at Ridgway had received the notice for Hall and mailed the notice to Dicken, Dicken might have received the notice one or two days earlier than he did. The bank received notice on the 19th and had the 20th to give notice to Hall; Hall then had until the 21st to mail notice to Dicken. Hall received notice at Louisville on the 22d, and the same day mailed the notice to Dicken.

"The principle of law is, that notice of dishonor must be given in a reasonable time. What is reasonable time depends upon circumstances. But the general rule is that it must be given the next day where the parties live at the same place or by the next practicable mail where they live at different post-offices. Where there are several endorsers living widely apart, or where the mails are infrequent, several days, even weeks, may intervene between the day of dishonor and the time when some endorsers may receive notice.

"Although the residence or place of business is the usual and proper place for giving notice, it will be good if actually given anywhere. And if the endorser requests it, it may be sent to him at any place he may designate, and no doubt when sent according to his directions, it would bind him, although he might never receive it.

"In this case, however, Hall gave no instructions to the bank. But the bank knew he was absent from home and knew his post-office address, and sent the notice to him by mail. He received it only one day later than he would have been entitled to receive it had he been at home, and no doubt actually received it sooner than he would have done, had it been left at his residence or usual place of business. He had no person expressly authorized to attend to his private business in his absence, and if the notice had been left at his residence or place of business it would probably have been

[Dicken v. Hall.]

neglected or he would not have received it in time to give notice to his prior endorser. Hall therefore had no good ground of complaint against the bank. It was rather a favor to him that the notice was sent to him at Louisville. Otherwise he might have lost his claim upon the prior endorser.

"Has Mr. Dicken any good ground of complaint? He says if the notice to Hall had been left at his residence in Ridgway, he (Dicken) would have received, or at least been entitled to receive, it one or two days earlier. There might be something in this if the delay had been to his injury or prejudice. But there is no allegation of that kind. Perhaps if the notice had been left at Hall's residence in Ridgway it would have been neglected until too late to notify Dicken, and in that way he might have escaped entirely. But such a contingency hardly constitutes a good ground of defence, at least *in foro conscientiæ.*

"In Byles on Bills 272, it is said: 'If a party whose name is on a bill direct notice to be sent to him when absent at a distance from his residence, so that its transmission thither and thence to the prior parties will occupy more time than if the notice had passed through the ordinary place of residence, a notice to him at the substituted and more distant places will, it seems, not only be a good notice as against him, but also a good notice as against prior parties.' The same doctrine is laid down in 1 Parsons on Notes and Bills 493, and Mr. Parsons goes farther and suggests, it may be the duty of the holder to send the notice to the party if he is absent from home and he knows his address.

"The right of an endorser to direct notice to be sent to him when absent from home is reasonable and proper, and is sustained by authority. When thus sent to him without previous direction, and he actually receives it, and receives it as soon or sooner than if left at his place of business, and he is not in any way prejudiced thereby, we think it is a good notice, and binds him. And we think it is good also as to the prior endorser who is not injured or prejudiced by the delay.

"We, therefore, direct judgment to be entered for the plaintiff on the reserved question."

The defendant assigned this entry of judgment for error.

*John S. Ferguson* and *J. Charles Dicken*, for plaintiff in error.—The bank could not change the usual and ordinary place for the giving of notice and without the request of Hall, mail the notice to Louisville. The law requires that the notice should be left at the residence or place of business, and the duty rests upon the holder to give notice at the place the law designates.

*Gazzam & Cochran*, for defendant in error.—The whole purpose and object of the rule requiring notice of dishonor to be given to

[Dicken *v.* Hall.]

an endorser of a bill or note, is to afford such endorser, as soon as may be reasonably possible after protest, an opportunity to secure himself against loss by reason of the maker's default: Hallowell & Co. *v.* Curry & Co., 5 Wright 328.

It seems also to be well settled that "if one about to be absent, directs that notice be sent to him at a certain distant place, notice so sent to him and from him, to prior parties, will bind both him and the prior parties, although it would have reached him and them much sooner if sent to his residence:" 1 Parsons on Notes and Bills 493, 494; Byles on Bills 272; Shelton *et al. v.* Braithwaite, 8 M. & W. 252; Eastern Bank *v.* Brown, 17 Maine 356. The reason of this is, notice should be given at such place as it will be most likely to reach the endorser promptly: Chouteau *v.* Webster, 6 Metcalf 1; Bank of Columbia *v.* Lawrence, 1 Peters 578; U. S. Bank *v.* Carneal, 2 Id. 553.

The judgment of the Supreme Court was entered October 21st 1878,

PER CURIAM.—This judgment is affirmed upon the opinion of the learned judge below on the reserved question.

Judgment affirmed.

## Bennett *versus* The Dollar Savings Bank.

B. borrowed a certain sum from a bank, and gave his bond and mortgage to secure the loan. He failed to pay, and the bank proceeded to sell, and purchased the property at sheriff's sale. B. alleged that there was a parol contract between the bank and himself, wherein it was agreed that the bank should sell the property and hold it for the benefit of B., and after the payment of his debt, interest and costs, was to return the balance to him. *Held,* that as the bank already had the mortgage upon which it proceeded, and there was no new loan or evidence of other consideration, such contract was not supported by any consideration. *Held, further,* that this contract was not a parol mortgage but a mere parol agreement, the violation of which did not make the bank a trustee for B. by reason of the purchase at the sheriff's sale.

October 11th 1878. Before SHARSWOOD, MERCUR, GORDON, PAXSON, WOODWARD and TRUNKEY, JJ. AGNEW, C. J., absent.

Error to the Court of Common Pleas, No. 1, of *Allegheny county:* Of October and November Term 1877, No. 172.

Assumpsit by John F. Bennett against The Dollar Savings Bank to recover damages for an alleged breach of contract.

On the 29th of January 1864 Bennett borrowed from the defendant $16,000, giving to the bank his judgment-bond and mortgage in the penal sum of $32,000, conditioned for the payment of the loan on January 29th 1865, with interest, at the rate of eight per